AARON, et al, Respondents, v. HEWETT, et al, Appellants.

(244 N. W. 380.)

(File No. 7113. Opinion filed September 27, 1932.)

L. F. *Green*, of D'eSmet, and *Max Royhl*, of Huron, for Appellants.

*Crawford & Crawford*, of Huron, for Respondents.

POLLEY, J. This is a suit in equity, in the nature of a creditors' bill, for an accounting and to enforce the statutory liability of the appellants herein for alleged violations of the incorporation laws of this state. The case was brought on behalf of all the creditors of the defendant Security Investment Company. The case was once here on appeal from an order overruling a demurrer to the complaint. Aaron et al v. Security Investment Co. et al, 51 S. D. 53, 211 N. W. 965. Reference is made to the opinion on that appeal for a brief outline of the contents of the complaint. It will be noted that prior to the commencement of this action

a member of the board of directors had started an action against the corporation, and procured the appointment of a receiver to take over the assets of the corporation and wind up its affairs. At the hearing on the demurrer in this case the trial court was of the opinion that the receiver appointed in the other case was a proper party plaintiff in this action, and as a part of the order overruling the demurrer on the former appeal in this case the trial court made the said receiver a party plaintiff in this action, and directed that from that time on this action be maintained by the said receiver for the benefit of all the original plaintiffs in this case.

After the demurrer was overruled, the defendants answered. A trial was had and the court made findings of fact and conclusions of law favorable to the plaintiffs. Judgment was entered accordingly, and the stockholders, officers, and directors of the said corporation have prosecuted this appeal. As noted by the court in the opinion on the other appeal, the complaint is very lengthy. The answer is practically as long as the complaint and the findings of fact somewhat longer than either of those two pleadings, so that it would be impractical to set out a comprehensive resume of the pleadings or the findings of fact, and only so much thereof will be stated as is necessary in the consideration of the various questions presented by the arguments of counsel.

The Security Investment Company, which for brevity will be hereinafter referred to as the "corporation," was capitalized at $25,000 divided into 250 shares of the par value of $100 each. The charter was issued on or about the 21st day of October, 1915, and upon the issuance thereof, the company organized for business. One hundred shares of the capital stock were subscribed for and paid for in full in cash. The remaining 150 shades were set aside as treasury stock to be held by the treasurer of the company to be issued and sold at some future date.

Thereafter, on the 28th day of November, 1917, the said last-mentioned stock was sold and issued to the then existing stockholders in amounts in proportion to their holdings in the original issue, and which was paid for by them giving their individual promissory notes therefor, with 6 per cent interest thereon, payable on the 23d day of January, 1919.

About the 3d of September, 1917, L. S. Madson and J. W. Blanch, two of the officers of the corporation, entered into a

written contract for the purchase of a certain tract of real estate. At the time of making this contract they placed their check for $2,000 in escrow in the Citizens' State Bank with a written memorandum to the effect that said money be paid to the vendors of said land when said contract had been duly executed and returned to said bank. Thereafter, and on or about the 4th day of October, 1917, the said Madson and Blanch executed a written assignment of the said contract to the corporation. This assignment was duly executed and acknowledged but was not recorded. On the following day the corporation entered into three separate written contracts for the sale of the said real property at a price that netted the corporation a profit of $6,200. These contracts were executed and acknowledged by the president and secretary of the corporation but were not recorded. In each of the said contracts the corporation agreed to convey the land described therein to the grantees by warranty deed and to furnish the vendee with an abstract showing good and perfect title to the said premises. Thereafter and on or about the 23d day of February, 1918, the grantors in the original contract conveyed the said premises to the said J. W. Blanch and L. S. Madson. Thereafter and on or about the 2d day of March, 1918, the said L. S. Madson and J. W. Blanch conveyed the said premises to the grantees named in the contracts executed by the corporation. No record was made in the register of deeds' office showing that the corporation ever had any interest in or took any part in this transaction, and no entry thereof was made in the books of the corporation relating to the above transaction, except an item of $28.16 which was entered on the corporation's journal on May 1, 1918, as a commission on the said transaction. As above stated, the net profit on this land deal was $6,200, which amount was divided among the stockholders, in proportion to the number of shares of stock purchased by each. Each of said stockholders then turned over the money so received to the corporation and had it applied as a credit on his note that he had given in payment for the capital stock. The notes were then canceled and returned to the makers but no interest was paid on any of them. The trial court held that the appropriation of these sums of money—$6,200 and $451.01 —was the result of a concerted plan on the part of the members of the board of directors of said corporation to withhold these sums

from the corporation and awarded plaintiff a joint judgment against the defendants for said amounts with interest on $6,200 at 7 per cent per annum, from the 23d day of March , 1918, and on $451.01 at the same rate from the 23d day of January, 1919.

It is the contention of appellants that the liability, if any, for the interest on these notes was a contract liability of each of the signers for his individual note and not a tort liability that would support a joint judgment against the signers of all the notes; but in view of the holding of the court that the withholding of this interest from the corporation was done pursuant to a concerted plan on the part of the directors to benefit themselves at the expense of the corporation, they were jointly liable therefor. The interest on these notes was an asset of the corporation in which both the corporation and its creditors had an interest, and that the directors had no authority to waive. We are aware of the rule invoked by appellants that a creditor may waive interest, but that rule contemplates a creditor capable of acting in the matter. In this case there was no one capable of representing the creditors but the directors, and they were acting strictly in their own interest and adversely to the interests of the corporation and the corporation's creditors. There was no error in awarding judgment for this item of $451.01 with interest thereon at 7 per cent per annum.

In regard to the item of $6,200 which was withheld from the corporation it is the contention of appellants that this money was all profit; that the corporation was solvent and that they had a right to distribute it to themselves; and, further, that this money never became a part of the assets of the corporation, and was no part of the capital of the corporation, the capital stock and surplus being intact at all times, and that there is not statutory liability against the directors. They further contend that the distribution of this fund was in effect a stock dividend, and was applied directly by the individual stockholders, applying it on their liability to the corporation on their stock notes. The record does not sustain this position. This money was earned by a corporation transaction. It was a part of the assets of the corporation and should, when collected, have been turned into the corporation's treasury to be used in the payment of its outstanding obligations. The corporation was not solvent as claimed by ap-

pellants at the time this money was collected. At the time this money was distributed among the stockholders the corporation was in debt $60,795 in excess of its total capital stock of $25,000; and at the same time its debts exceeded its assets $21,301.79, and the excess of indebtedness over assets was never reduced below that amount during the existence of the corporation.

Section 8789, Rev. Code 1919, provides in part as follows: "The directors of any corporation must not make dividends except from the surplus profit arising from the business thereof; nor must they divide, withdraw or pay to the stockholders, or any of them, any part of the capital stock; nor must they create debts beyond the subscribed capital stock, or reduce or increase the capital stock except as specially provided by law. * * *" The division of this money as shown by the record was a clear violation of these provisions of the statute and under the provisions of this same section the directors " * * * are, in their individual and private capacity, jointly and severally liable to the corporation and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or debt contracted. * * *" In support of their claimed right to this money appellants strenuously contend that: "This $6200.00 never became any part of the capital stock." In other words, this so-called Lake Preston land deal was not a corporate transaction and that the profit therefrom did not belong to the corporation, and that they had a right to do with it as they pleased. The trial court found otherwise, and the facts found by the trial court, the correctness of which is not questioned by appellants, showed beyond any doubt that it was a corporation transaction. Whatever may have been the nature of the transaction when Madson and Blanch made the contract to purchase the land, after they assigned the contract to the corporation, the corporation was the owner of the contract. It is clear that this was the understanding of the corporation officers, for when the contract to sell the land was made it was the corporation that made it, and it was the corporation, and not Madson and Blanch, that covenanted to furnish an abstract showing perfect title to the land.

Appellants devote a considerable portion of their printed brief and cite innumerable cases in support of their contention that they had a right to pay themselves this money as a dividend from

the profits of a corporate transaction. Appellants are not strictly consistent when with one breath they contend that this money never belonged to the corporation, and with the next breath they just as strenuously contend that it was part of the profits of the corporate business and properly applicable to the payment of dividends. Whether the appellants were entitled to dividends is not an issue in this case, but conceding they were entitled to dividends, they had already paid themselves a dividend out of the admitted assets of the corporation. During the year 1917 when they had a paid-up capital stock of but $10,000, they paid themselves a dividend of 8 per cent of said amount. During the year 1918 when they had a paid up capital stock of $25,000, they paid themselves a dividend of 18 per cent of that amount. It was during this year that they appropriated to themselves the profit of $6,200 made on the Lake Preston land deal. During the year 1919 they paid themselves three dividends, one of 20 per cent, one of 9 per cent, and one of 5 percent of their total capital stock of $25,000. And during this same year they paid to themselves the following amounts as salaries: A. H. Hewett, $300; J. W. Blanch, $300; John Bonde, $300; G. H. Glendenning, $300; James Holcomb, $300; L. S. Madson, $450; C. P. Swift, $430; and C. C. Raisbeck, $120. For the year 1920 they paid themselves as salaries the following amounts: A. H. Hewett, $300; G. H. Glendenning, $300; J. W. Bonde, $300; C. P. Swift, $430; John Bonde, $300; James Holcomb, $300; L. S. Madson, $450; C. C. Raisbeck, $120. So it would seem they were fairly generous with themselves in the way of dividends and salaries without appropriating to themselves the $6,200 made on the Lake Preston land deal, and the court did not err in requiring them to return this amount to the corporation.

■ It appears that Lars S. Madson, who was an officer of the corporation throughout its entire life, was a continuous and persistent borrower from the corporation. The records of the corporation contain entries of sixty loans to Madson. The court found that the other officers of the corporation, appellants herein, knew of and approved the making of these loans; that there is still due and unpaid on these loans the sum of $10,022.95; and that by reason of this indebtedness the plaintiff is entitled to judgment for such amount against all of the appellants. The holding

of the trial court on this item is based on section 8831, Rev. Code 1919. This section reads as follows: "The purpose for which every such corporation shall be formed must be distinctly and definitely specified in the articles of incorporation, and it must not appropriate its funds to any other purpose, nor must it loan any of its money to any stockholder therein; and if any such loan or misappropriation be made, the officers who shall make it, or who shall assent thereto, shall be jointly and severally liable, to the extent of such loan or misappropriation, and interest, for all the debts of the corporation contracted before the repayment of the sum so loaned or misappropriated." And section 8836, Rev. Code 1919, is as follows: "If any such corporation organized under the laws of this state shall wilfully violate any of the provisions of law relating or applying to such corporation, and shall thereby become insolvent, the directors ordering or assenting to such violation shall be jointly and severally liable for all debts contracted after such violation." It is contended by appellants that there is no finding of fact sufficient to support the court's conclusion on this item. The court found that as early as September 10, 1918, Madson was indebted to the corporation on loans in the sum of $1,800 and that on the 22d day of July, 1919, he was indebted to the corporation on loans from the corporation in the sum of $2,600. The court further found that thereafter Madson made three other loans from the corporation, to-wit: October 19, 1922, $1,500; December 30, 1922, $7,275; and on December 30, 1922, $1,247.95—aggregating $10,022.95. This is the amount for which judgment was awarded.

It is further contended by appellants that section 8831 and 8836, Rev. Code 1919, do not apply to corporations such as the one involved in this action. These two sections are contained in the chapter headed "Corporations For Profit." This corporation comes under this head. These two sections have been a part of the above chapter and been in force since the 1st of July, 1919. The liability under this claim did not accrue until in 1922; therefore, it is governed by these sections of the Code.

On or about the 18th day of May, 1921, the corporation made a loan of $15,000 from the Bank of Brookings and gave said bank a note executed by the corporation for that amount. Said note was guaranteed by the appellants. Thereafter appellants paid

the sum of $14,000 on said note, but the balance of $3,599, including interest, was paid out of the funds of the corporation. At the time of the making of this loan, the indebtedness of the corporation, exclusive of the said $15,000, and exclusive of any real estate indebtedness, was in excess of $25,000, the amount of the total capital stock of the corporation. Upon these facts the trial court held that plaintiffs were entitled to judgment against appellants for $3,559. This ruling is assigned as error by the appellants. Under the provisions of section 8789 and 8836, appellants were liable for the whole of this indebtedness and should have paid it all. Having paid a part of it out of the assets of the corporation, they became liable to the corporation for the amount so taken from the assets of the corporation and there was no error in entering judgment against them.

During the years 1917 upto July 1, 1922, the Central Dakota Mill Company was a corporation doing business at the city of Arlington. On or about the 1st of July, 1922, this company being insolvent went into voluntary liquidation and without the aid of the court or a receiver disposed of its assets for the benefit of its creditors. At the time of such liquidation said mill company was indebted to the Security Investment Company in the sum of $5,000 and accrued interest thereon amounting to $226. On or about the 9th day of August, 1921, two written contracts of guaranty had been executed, one by various stockholders of the said mill company and the other by certain of said stockholders and the Security Investment Company by L. S. Madson, secretary. The assets of the mill company brought a sufficient amount to pay a dividend of 42.8 per cent on its debts. The dividend to which the investment company was entitled amounted to $2,220.25. In addition to the amount received for the assets of the mill company, the signers on the said contracts of guaranty paid in $13,000 to be applied on the debts of the said mill company, but instead of paying the investment corporation the said dividend and its proportionate share of the said $13,000, said amounts were obtained by and retained by the Citizens' State Bank of Arlington. Upon these facts the court concluded that the plaintiff in this action was entitled to judgment against the Citizens' Bank of Arlington for the amount of the said note and interest and also against the appellants L. S. Madson, C. P. Swift, A. H. Hewett, J. W. Bonde,

Geo. H. Glendenning, James Holcomb, and Jesse W. Blanch, on the theory that said parties were responsible for paying the said money to the bank instead of the investment corporation. The court further found as a fact that on or about the 1st day of July, 1922, the investment corporation was indebted to the Citizens' State Bank in the sum of $5,300 and the bank claimed it was entitled to retain the above-mentioned sums of money to be applied in payment of the said indebtedness of $5,300. In our opinion the bank is correct in this contention and this amount should be deducted from the judgment entered in favor of the respondents.

The court made special findings in regard to the indebtedness of the corporation in excess of its capital stock and entered judgment against the directors and officers accordingly. Appellants complain of this judgment for the reason that the court did not find the value of the capital stock. The court placed the value of the capital stock at its "par value," and the amount of money that had actually been paid in on the stock. The capital stock of the corporation was fixed by its charter at $25,000. This amount is all that was ever paid in on stock subscriptions, and of this amount $6,200 was paid with money that already belonged to the corporation.

The court found that the defendants had violated the provisions of sections 8836, 8831, and 8789, and the judgment is based upon the provisions of these three sections.

■ . The appellants contend that the judgment is not supported by the pleadings. With this contention we do not agree. The complaint was tested on demurrer and held sufficient, and the judgment is within the issue presented by the pleadings. Appellants also invoke the six-year statute of limitations. The six-year statute of limitations does not apply to this case. In the first place, section 2274, Rev. Code 1919, provides that: "No statute of limitations is a bar to any suit against such directors for any sum for which they are made liable by this section." And the six-year statute does not apply.

The judgment should be amended in the particulars heretofore pointed out, and as so amended it should be affirmed.

CAMPBELL, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.